The People v. Warner.

SAME TERM. *Before the same Justices.*

THE PEOPLE *vs.* WARNER.

The act to prevent raffling, and lotteries, was intended to prohibit the sale of lottery tickets, in this state, whether the lottery was established here or elsewhere. And an indictment under the statute, for vending lottery tickets, need not allege that the lottery was established in this state.

An indictment for vending a lottery ticket need not expressly aver that the ticket was of a lottery established or set on foot for the purpose of disposing of real estate, goods, money, or things in action.

The character and description of the lottery need not form the subject of an express averment. It is sufficient if these appear argumentatively, in the indictment; especially after verdict.

Argumentative pleading is a mere formal defect, which is aided by verdict, and is good on general demurrer.

MOTION for a new trial. The defendant was indicted for vending and selling a certain ticket purporting to be in the Grand Consolidated Lottery of Delaware and Georgia; and having been convicted upon the trial, he brought a writ of error, and moved for a new trial. The facts sufficiently appear from the opinion of the court.

*H. Sheldon,* (district attorney,) for the people.

*B. Davis Noxon,* for the defendant.

*By the Court,* GRIDLEY, J. The prisoner has been convicted, under the 29th section of the act entitled "Of raffling and lot-

The People *v.* Warner.

teries," (1 *R. S.* 666,) of vending lottery tickets, and now objects, on a writ of error, to the sufficiency of the indictment. The counsel for the prisoner insists, that upon the authority of the case of *The People* v. *Payne*, (3 *Denio*, 88,) the indictment should expressly aver the vending of the ticket of a lottery *established or set on foot, for the purpose of disposing of real estate, goods, money or things in action;* and that it should also appear that such lottery was established in this state.

I. With respect to the last branch of this proposition, we think it very clear that the act was intended to prohibit the sale of lottery tickets, wherever the lotteries may have been established. If this be not so, many persons have been improperly convicted and punished. (*See* 3 *Denio*, 99, 91, 212; *and* 1 *Comstock's Rep.* 180.)

II. It doubtless should appear upon the face of the indictment, that "the lottery, game or device of chance, should have been established, for the purpose of exposing, setting up to sale, or disposing of houses, lands, tenements or real estate or money, goods, or things in action." But we think that this fact is averred in the indictment. The word "*lottery*" is susceptible of no other meaning; and the descriptive words of the statute were intended to embrace and describe other games and devices of chance, not falling within the strict definition of lotteries, but akin to them in their principle and tendency; rather than to define one class of lotteries as distinguished from others. But the indictment charges the prisoner with selling a ticket in the "Grand Consolidated Lottery of Delaware and Georgia, numbered 731, with combinations numbered thereon, to wit, 12, 43, 55, which said ticket purported to entitle the holder thereof to one quarter of such prize as might be drawn to its number, subject to a deduction of 15 per cent, payable forty days after the drawing," &c. Now, the defendant has been proved to have sold a ticket, of this description, viz: a ticket entitling the holder to a quarter of a *certain prize, deducting* 15 *per cent.* It seems to us impossible to maintain, that the lottery in this case was not established to dispose of *prizes* of real estate, personal estate, money or things in action. And it is difficult to enter-

tain a doubt that the "*prize*" was to be paid in money.    The fortunate holder could not otherwise very conveniently receive his quarter, deducting 15 per cent.

It is however argued that the character and description of the lottery does not form the subject of an *express averment*.    The answer to this suggestion is that it need not.    It is sufficient that it appears argumentatively, (especially after verdict,) since the enactment of the statute, (2 *R. S.* 728, § 32,) which declares that "no indictment shall be deemed invalid, nor shall the trial, judgment, or other proceedings thereon be affected by reason of any defect or imperfection *in matters of form, which shall not tend* to the prejudice of the defendant."    That argumentative pleading is a mere *formal defect*, which is aided by verdict, and is good on general demurrer, see *Com. Dig. Pleader, E* 3; 1 *Saund.* 274, note 1; 9 *John.* 314; *Gould's Pl.* 65. The fact having been clearly averred, (though not by an independent and express allegation,) and proved, it is not perceived how the informality of the statement could have prejudiced the prisoner.    On the contrary, we think it could not; and we regard this as one of the informalities which the statute was intended to provide for.    To hold otherwise would be to sacrifice substantial justice to a mere technical informality.    Argumentative pleading in an indictment, of a character similar to this, has been sustained by the supreme court, in *The People* v. *Rynders,* (12 *Wend.* 431.)    And in the case of *The People* v. *Phillips,* (5 *Wend.* 19, 20,) the decision goes much farther than is necessary to uphold the indictment in this case.    This point is also now regarded as settled law in the court of appeals.    (1 *Comstock's Rep.* 185.)

Motion for new trial denied.