UNITED STATES v. POLITZER.

(District Court, N. D. California. December 20, 1893.)

No. 2,773.

Post Office—Nonmailable Matter—Lotteries.
    Government bonds, issued under a scheme in which the time of redemption and certain premiums or prizes to be awarded to some of the holders are fixed by a drawing, are "lotteries," and the mailing of circulars announcing the redemption of certain bonds, and the date of the next drawing, is prohibited by Rev. St. § 3894. Horner v. U. S., 13 Sup. Ct. 409, 147 U. S. 449, followed.

At Law. Indictment of Adolph Politzer for depositing in the mails certain circulars relating to alleged lotteries.

Chas. A. Garter, U. S. Atty.
Edmund Tausky, for defendant.

MORROW, District Judge, (charging jury.) The indictment in this case contains four counts. They charge substantially:

(1) That defendant did on the 28th day of November, in the
    v.59 F.no.2—18

year 1890, deposit in the mails of the United States, in the city and county of San Francisco, to be conveyed and delivered by the United States mail, a certain circular, which said circular was then and there contained in an envelope, upon which said envelope was a postage stamp of the United States of the denomination of one cent, and addressed in writing to T. H. Stickler, care John G. Wright, 227 Commercial street, Salem, Oregon. This charge has relation to the first envelope and contents introduced in evidence.

(2) The second count contains substantially the same allegation with respect to an envelope and contents addressed to T. M. Roseberg, care John G. Wright, 227 Commercial street, Salem, Oregon.

(3) The third count contains substantially the same allegation with respect to the envelope and contents addressed to Henry S. Simon, Cigar Store, Salem, Oregon.

(4) The fourth count contains substantially the same allegation with respect to an envelope and contents addressed to Fred Larse, care John G. Wright, 227 Commercial street, Salem, Oregon.

The indictment relates to these four envelopes and contents, charged to have been deposited in the United States mail, to be transmitted by the United States mail, and delivered to the parties to whom they were addressed. The indictment is found under section 3894 of the Revised Statutes. That section provides (so far as is material to this case) as follows:

"No * * * circular concerning any lottery * * * or other similar enterprise offering prizes dependent upon lot or chance * * * shall be carried in the mail or delivered at or through any post-office or branch thereof, or by any letter carrier. * * * Any person who shall knowingly deposit, or cause to be deposited, or who shall knowingly send, or cause to be sent, anything to be conveyed or delivered by mail in violation of this section, or who shall knowingly cause to be delivered by mail anything herein forbidden to be carried by mail, shall be deemed guilty of a misdemeanor," etc.

Now, the question for you to determine is whether or not this defendant deposited or caused to be deposited in the mails a circular concerning any lottery or other similar enterprise offering any prize by lot or chance. The papers contained in these envelopes have been exhibited to you. They are alike, and are headed, "Redemption List of European Government Premium Bonds," and refer to 5 per cent. Austrian government bonds, 1860; Brunswick bonds of 1868-69; Italian red cross bonds of 1885; Bucharest bonds of 1869; Hungarian red cross bonds of 1883. Together with the reference here made to those bonds, there are the following other statements, with reference to the Austrian government bonds: "Drawing of November 1st, 1890. Next drawing, Feb. 1st, 1891." With reference to the Brunswick bonds of 1868 and 1869, it says: "Each bond of the above series must draw a prize in the premium drawing of December 31st, 1890. Capital prize, marks 60,000." With reference to the Italian red cross bonds of 1885, after giving "Drawing of November 1st, 1890," it says, "Next drawing takes place February 1st, 1891." With reference to the Bucharest bonds of 1869, it says: "Drawing on November 1st, 1890. Next drawing, Feb. 1st, 1891. Capital prize, francs 25,000." As to the Hungarian red cross bonds of 1883, it says: "Redemption of No-

vember 1st, 1890. Next redemption takes place March 1st, 1891."

The present statute prohibiting the sending of matter through the mails relating to lotteries and other similar enterprises originally provided an offense for sending circulars, etc., concerning "illegal" lotteries, but in 1876 congress struck out the word "illegal," and left the statute standing with respect to lotteries and similar enterprises, whether legal or illegal. Prior to that time the Louisiana State Lottery had been authorized by the law of that state, and it is probable the word "illegal," in the statute, was struck out in order to provide against the transmission through the mails of any matter relating to any enterprise similar to the Louisiana State Lottery.

Counsel for defendant has urged that the dealing in, purchasing, or selling of the bonds mentioned in these circulars is not prohibited by the statute of this state. That is true; but it is not material in this case. It is also true with respect to the Louisiana State Lottery. That is authorized by a state statute, but yet the transmission of circulars concerning that lottery has been prohibited by the laws of the United States since 1876. It is your duty to determine whether defendant is guilty under the provisions of the statutes of the United States. You have nothing whatever to do with the provisions of the state statutes in this connection. It is the constitutional province of congress to protect the mail against the transmission of letters, postal cards, circulars, or other mail matter concerning enterprises deemed improper. Therefore congress, under undoubted constitutional authority, has prohibited the sending through the mails of the United States any matter concerning lotteries or other similar enterprises involving lot or chance. Whether it is unlawful under the state law is a matter not under consideration. It is our duty to determine what the law of the United States is, and to administer that law.

With respect to this particular matter, the question whether these bonds, or bonds of the character mentioned here, come within the provisions of the state statute prohibiting lotteries, was raised in the state of New York, and brought before the courts there. The state of New York permitted the dealing in this class of securities. Kohn v. Koehler, 96 N. Y. 362. The question whether correspondence relating to such bonds was within the United States statutes was carried to the supreme court of the United States in Horner v. U. S., 13 Sup. Ct. 409, upon three questions presented by the United States circuit court of appeals for the second circuit, as follows:

"(1) Do the bonds mentioned and described in the first and second counts of the indictment herein represent a lottery or similar scheme, within the meaning of section 3894 of the Revised Statutes of the United States?

"(2) Is the circular described and set forth in the first and second counts of the indictment herein a circular concerning any lottery, so-called 'gift concern,' or other similar enterprise offering prizes dependent upon lot or chance, within the meaning of section 3894 of the Revised Statutes of the United States?

"(3) Does the circular mentioned and set forth in the first and second counts of the indictment herein constitute a 'list of the drawings at any lottery or similar scheme,' within the meaning of section 3894 of the Revised Statutes of the United States?"

You observe, in that case it was a circular that was set forth in the indictment. It was the kind of circular charged to have been deposited by the defendant in this case. The defendant in that case was arrested, tried, and convicted by the court. Then those questions were certified to the supreme court, and the supreme court say:

"We are of the opinion that the scheme in question falls within the inhibition of section 3894, as amended. The denunciation of that section is no longer against sending by mail a circular concerning an 'illegal' lottery, but is against mailing a 'circular concerning any lottery, so-called "gift concert," or other similar enterprise offering prizes dependent upon lot or chance.' "

For the purpose of explaining the views of the supreme court, it cited with approval certain definitions of the word "lottery," as follows:

"In the Century Dictionary, under the word 'lottery,' is the following definition: 'A scheme for raising money by selling chances to share in a distribution of prizes; more specifically, a scheme for the distribution of prizes by chance among persons purchasing tickets, the correspondingly numbered slips or lots representing prizes or blanks being drawn from a wheel on a day previously announced in connection with the scheme of intended prizes. In law, the term "lottery" embraces all schemes for the distribution of prizes by chance, such as policy-playing, gift exhibition, prize concert, raffles at fairs, etc., and includes various forms of gambling. Most of the governments of the continent of Europe have at different periods raised money for public purposes by means of lotteries; and a small sum was raised in America during the Revolution by a lottery authorized by the continental congress. Both state and private lotteries have been forbidden by law in Great Britain and in nearly all of the United States, Louisiana and Kentucky being the notable exceptions.' Under that definition, the circular in question had reference to a lottery. In Webster's Dictionary, 'lottery' is defined as 'a distribution of prizes by lot or chance.' In Worcester's Dictionary it is defined as 'a distribution of prizes and blanks by chance; a game of hazard, in which small sums are ventured for the chance of obtaining a larger value, either in money or in other articles;' and it is there said that during the eighteenth century the English government constantly availed itself of this means to raise money for various public works. In the Imperial Dictionary the word is defined thus: 'Allotment or distribution of anything by fate or chance; a procedure or scheme for the distribution of prizes by lot; the drawing of lots. In general, lotteries consist of a certain number of tickets drawn at the same time, some of which entitle the holders to prizes, while the rest are blanks. This species of gaming has been resorted to at different periods by most of the European governments as a means of raising money for public purposes.' "

Now, upon these definitions, the supreme court say:

"Although the transaction in question was an attempt by Austria to obtain a loan of money to be put into her treasury, it is quite evident that she undertook to assist her credit by an appeal to the cupidity of those who had money. So she offered to every holder of a one hundred florin bond, if it was redeemed during the first year, 135 florins, if during the second year 140 florins, and so on, with an increase of five florins each year, until the sum should reach two hundred florins, and she also offered to the holder, as part of the bond, a chance of drawing a prize varying in amount from four hundred florins to two hundred and fifty thousand florins. Every holder of a bond has an equal chance with the holder of every other bond of drawing one of such prizes. Whoever purchases one of the bonds purchases a chance in a lottery, or, within the language of the statute, 'an enterprise offering prizes dependent upon lot or chance.' The element of certainty goes hand in hand with the element of lot or chance, and the former does

not destroy the existence or effect of the latter. What is called in the statute a 'so-called gift concert' has in it an element of certainty, and also an element of chance; and the transaction embodied in the bond in question is a 'similar enterprise' to lotteries and gift concerts."

The supreme court reviews the authorities with reference to what has been considered and commented upon by the various courts of the United States as constituting a "lottery," and finally arrives at the conclusion that the three questions certified to the supreme court should be answered in the affirmative, viz.: "Do the bonds mentioned and described in the first and second count of the indictment herein represent a 'lottery or similar scheme,' within the meaning of section 3894 of the Revised Statutes of the United States?" The supreme court say, "It does." To the second question: "Is the circular described and set forth in the first and second counts of the indictment herein a 'circular concerning any lottery, so-called "gift concert," or other similar enterprise offering prizes dependent upon lot or chance,' within the meaning of section 3894 of the Revised Statutes of the United States?"—the supreme court say, "It is." To the third question: "Does the circular mentioned and set forth in the first and second counts of the indictment herein constitute a 'list of drawings at any lottery or similar scheme,' within the meaning of section 3894 of the Revised Statutes of the United States?"—the supreme court say, "It does." Therefore, so far as the character of these bonds is concerned,—the Austrian government bonds,—the supreme court holds it is a lottery scheme or enterprise offering prizes dependent upon lot or chance. Testimony has been offered in the present case as to the character of these bonds, namely, the Austrian bonds, the Brunswick bonds, the Italian red cross bonds, the Bucharest bonds, and the Hungarian red cross bonds. This testimony tends to show that they involve the element of lot or chance.

In order to convict defendant of the offense charged in the indictment, it is incumbent upon the government to prove two facts: (1) That the defendant knowingly deposited or caused to be deposited in the mails, for conveyance or delivery thereby, the circulars set forth in the indictment; and (2) that such circulars concern a lottery.

Every person is presumed to know and intend the legal and necessary consequences of his own acts. Therefore, if he deposited or cause to be deposited matter in the mail, properly prepaid and addressed, he is presumed to know and intend that such matter would be conveyed and delivered to the persons to whom it is addressed; and proof of such mailing is sufficient to authorize you to find that it was intended for delivery through the mails to the persons addressed. Under the decision of the supreme court of the United States, upon the law under which this prosecution has been brought and conducted, the bonds which have been offered in evidence and explained to you involve the elements of a lottery, in this: the redemption at different times, and the prizes or premiums that are awarded to some of them in different amounts at such redemption, depend on chance or lot. Therefore I charge you that if you shall

find that the circulars set forth in the indictment and produced in evidence before you relate to the bonds I have mentioned, then they relate to and concern a lottery such as the statute contemplates, and are by law nonmailable; and if you shall determine that these circulars, or any of them, were deposited in the mail by the defendant, or under his authority or direction, or caused to be mailed or to be deposited in the mail by him, it is then your duty to find the defendant guilty of the misdemeanor charged in the indictment.

To constitute the offense of knowingly depositing or causing to be deposited in the mail a circular concerning a lottery, it is necessary that the offending party should be conscious of the physical act of depositing or causing to be deposited the circular in the mail, and that he should be aware that such circular related to an enterprise where the premiums or prizes or other important pecuniary detail is determined or fixed by lot or chance. The absence or presence of intent or design to evade the law cuts no figure in the case whatever. Whether or not the defendant knew that he was violating the law, or whether or not he knew of the existence of any such law, is not for you to consider. It is a most elementary principle of legal jurisprudence that ignorance of the law excuses no one. Every one is presumed and bound to know the law of the land; and his ignorance of it or of its effects or operation is no valid defense or excuse for an act committed in violation of it. Therefore I further charge you that if you shall determine that the defendant mailed or caused to be mailed the circulars in evidence, knowing that such act constituted the mailing, and being aware of the fact that the circulars thus mailed related to the bonds produced before you, then it is your duty to find that the defendant knowingly mailed or caused to be mailed such circulars, within the meaning of the statute, and he is guilty, therefore, of the offense charged.

The postmark on the envelope is presumptive evidence of the mailing of the envelope thus marked, with its inclosure, at the time and place designated in the postmark. If, therefore, an envelope have a San Francisco postmark of a certain date, it is presumptive evidence that such envelope, with its inclosure, was mailed at such date in San Francisco. You will further take into consideration in determining the question who mailed the circulars in evidence the circumstantial evidence in that connection, which consists of the testimony of Mr. Ford, the superintendent of the mails in the San Francisco post office, that other and similar circulars were mailed in the city, and passed through this post office in the regular transmission of mail matter, at or about the time of the commission of the offense charged in the indictment. You will also consider the other testimony that the defendant was at such time engaged in the business referred to in these circulars at the place designated in such circulars in San Francisco; and you will further consider the probability or improbability that any other person not connected with or acting under the authority of the defendant would have obtained from him such circulars, and, without his consent, deposited the

same in the mail.    You will further take into consideration, in determining the question, the circumstance that the envelopes contained on the outside, "337 Pine Street, San Francisco, Cal.," and that they contained the name of the defendant; and also, on the bottom of the circular, it reads:   "All premiums cashed at once. Any information cheerfully furnished at our office.   European Premium Bond Exchange.    Politzer & Co., 337 Pine St., San Francisco, Cal.,"—and that it appears he was conducting an office at this place, No. 337 Pine street, and that his name is signed at the bottom of these circulars; and also whether it would be likely any other person would take those envelopes containing those circulars, and deposit them in the mail.

The defendant has requested some instructions, which I will give you:

The defendant is presumed to be innocent until proven guilty. The burden of proof is upon the government to establish the defendant's guilt beyond a reasonable doubt.    It must so establish every fact and every element going to constitute the offense charged. It is not enough that the defendant deposited, or caused to be deposited, a circular concerning a lottery.   He must have done so knowingly; that is to say, he must have deposited these letters containing the circulars knowing that they related to these bonds.   The defendant has a right to be a witness in his own behalf or not, as he chooses, and his failure to testify on his own behalf must not in any way be construed by you prejudicially to him.    His failure to testify must not and does not create any presumption against him. He has a right to rely upon the presumption of innocence, and to require the government to prove beyond a reasonable doubt every element going to constitute the offense charged.    But, gentlemen of the jury, the doubt must be a reasonable doubt.    It must be a doubt arising out of the evidence, and not be a fanciful conjecture, or a strained inference.    It must be such a doubt, arising out of the evidence, as a reasonable man would act upon or decline to act upon in his own important affairs.    You are to determine this case from the testimony, and upon the inferences to be drawn from the facts the testimony has established to your satisfaction.    You will find the defendant guilty or not guilty as you find the facts to be upon each or all the counts.    There are four counts, and you will find defendant guilty or not guilty upon the four counts.    They charge separate and distinct offenses.    The testimony is, however, directed towards all four of the counts.

Mr. Tausky:   The bond referred to by the supreme court decision was the bond of 1863, which is a different bond from the bond of 1860 in this case.    The terms of the bond are entirely different.

MORROW, District Judge:    The reading of the decision of the supreme court was for the purpose of stating the views of the court with respect to this class of bonds, as to whether or not they come within the provisions of the statute.    The testimony is to the effect

that the time of payment of these bonds depends on a drawing, and the amount to be received as premium depends on a drawing. These drawings involve the elements of chance. It is not necessary for you to find that these circulars refer in every instance to bonds held to involve the elements of chance. If the circulars refer to any bonds of that character, that is sufficient.

Mr. Tausky: We except to the refusal of the court to give all the instructions asked for by defendant.