THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOHN J. TRACE, Defendant.

Police Justice Court, Village of Mt. Morris, February 2, 1951.

No appearance for plaintiff.

*John J. Trace,* defendant in person.

FERRIGNO, J. Defendant was arrested by a State Police Officer in the village of Mt. Morris and the information filed in this court charged that the defendant " did on the 25th day of January, 1951, at the Johnny's Barbecue Restaurant, in the Village of Mt. Morris, County of Livingston, N. Y. at about 10:15 o'clock in the afternoon of said day, did commit the crime of offering property for disposal, dependent upon a lottery in violation of Article 130, Section 1376, of the Penal Law of the State of New York by wrongfully, unlawfully, willfully, and knowingly did offer for sale, by means of a twenty-five cent punchboard, numerous boxes of Schräft's chocolates, a winner being determined by inserting a metal punch into said board, and if number extracted corresponded with a number listed at top of board, a winner received a box of chocolates, same being a lottery. Also possessed a money twenty-five cent punch board and offered chances on same for various sums of money, winner being determined same as listed and outlined above."

'Defendant appeared and the charge was read to him, he was advised of his rights by the court, and pleaded not guilty.

At the trial held January 31, 1951, in this court, witness for the People testified that he walked into defendant's place of business, a restaurant, saw two " punch boards " lying on the counter and arrested the defendant. The defendant did not take the witness stand. The facts therefore are uncontroverted.

The question to be determined by this court therefore is whether or not the possession of " punch boards " placed in open view on a lunch counter constitutes the misdemeanor of " Offering property for disposal dependent upon the drawing of any lottery " in violation of section 1376 of the Penal Law of the State of New York.

Section 1376 of the Penal Law states: " A person who offers for sale or distribution, in any way, real or personal property, or any interest therein to be determined by lot or chance, *dependent upon the drawing of a lottery* within or without this state, or who sells, furnishes or procures, or causes to be sold, furnished, or procured, in any manner, a chance or share, or any interest in property offered for sale or distribution, in violation of this article, or a ticket or other evidence of such a chance, share, or interest, is guilty of a misdemeanor." (Italics supplied.)

The Police Court during the trial of a misdemeanor sits as a Court of Special Sessions and questions of both fact and law are decided by the Police Justice sitting in such court. He must decide the effect of the evidence, and as was stated by LEHMAN, J., in *People* v. *Nixon* (248 N. Y. 182, 191-192):

" We know, now, that especially in courts where judicial proceedings are often informal, a requirement that a party must at his peril separate questions of law from questions of fact and move for a decision on questions of law before final submission of the case, does not facilitate the administration of the courts and does at times result in injustice.

" The instant case shows the artificiality of the rule which we have heretofore followed, and that it is out of harmony with the actual proceedings in the courts. The defendants have pleaded not guilty. They have not controverted the evidence produced against them. Their attitude has consistently been that the evidence did not justify conviction."

This court has made an exhaustive study and analysis of the law in cases in the State of New York and elsewhere. The question as to whether or not a " punch board " is a lottery is

a difficult one to determine. There has not been any decision of any court of record in this State that this court could find, which has held that a " punch board " is a lottery, per se. Accordingly, by necessity, this court must look to the statute, its wording and the decisions thereunder and by analysis and comparison of the said decisions attempt to deduce the intent of the Legislature.

It is a fundamental maxim of the law that all statutes particularly those which set forth crimes and misdemeanors should be strictly construed. Further, words used in such statutes should not be given tortuous meanings, but such meanings as are in popular usage.

Words and Phrases (Vol. 25, pp. 675–678) cites many cases defining " Lottery ", such as the following:

" ' A " lottery " may be defined to be a game by which a person paying money becomes entitled to money or other thing of value on certain contingencies, *determinable by lot cast in a particuluar way* by the manager of the game.' *Chavannah* v. *State,* 49 Ala. 396, 397. " (Italics supplied.)

" 'Lottery ' which is a form of unlawful gaming, as used in the Constitution, has no technical legal signification different from the popular one, and the word is to be given meaning generally accepted and in popular use at time Constitution was adopted. * * * *State* v. *Schwemler,* 154 Ore. 533."

" Word ' lottery ' is used in statute and constitutional provision prohibiting lotteries in its commonly accepted and generally understood meaning. * * * *Iris Amusement Corporation* v. *Kelly,* 336 Ill. 256 * * * "

" The word ' lottery ', as used in the statute forbidding the same, is used in its ordinary and popular sense. The statute aimed to prohibit the mischief of that species of gambling. *People* v. *Noelke,* 1 N. Y. Cr. R. 252, 257."

" The term ' lottery ' has no technical meaning, and the courts adopt the generally accepted definition in popular use. *State* v. *Coats,* 158 Ore. 122."

" In the Century Dictionary, under the word ' lottery,' is the following definition: ' A scheme for raising money by selling chances to share in a distribution of prizes; more specifically, a scheme for the distribution of prizes by chance among persons purchasing tickets, the correspondingly numbered slips or lots, representing prizes or blanks, being drawn from a wheel on a day previously announced in connection with the scheme of intended prizes.' * * * In general, lotteries consist of a

certain unmber of tickets *drawn at the same time,* some of which entitled the holders to prizes, while the rest are blanks. * * * *United States* v. *Politzer,* 59 F. 273, 274.'' (Italics supplied.)

The word '' lottery '', as commonly used and understood by popular usage, connotes a sale of tickets to various persons and after such sale, on a certain day a drawing is made of one or more numbers by lot, such numbers so drawn, being the winners of a prize, and the persons holding a ticket corresponding to such numbers being the winner of such prize and all the other persons receiving nothing.

That is the popular usage of the word lottery and apparently that is what the Legislature had in mind. A careful reading of the statute in question states '' a person who offers for sale or distribution, in any way, real or personal property, or any interest therein to be determined by lot or chance, *dependent upon the drawing of a lottery* within or without this state.'' (Italics supplied.) The primary purpose of this section, 1376, of the Penal Law, and its companion sections 1370, 1371, 1372, 1373, 1374, 1377, 1378, 1379, 1380, 1381, 1382, and 1383 was to outlaw lotteries and raffles which at one time were legal in the State. There have been many decisions as to what constitutes a lottery some dating back to 1818 when it was held by one of our courts that to receive money and transfer a ticket, agreeing to repay a larger sum *if a* particular number be drawn on a particular day, is selling a chance of a ticket within the meaning of the act. (Baldwin's Cases, 3 N. Y. City H. Rec. 96.) In 1852 under the Revised Statutes (1 Rev. Stat. of N. Y., part I, ch. XX, tit. VIII, §§ 30, 31, p. 666) which was a statute against raffling and lotteries it was held that such statutes did not embrace the distribution among members of an art union of its works of art by lot conducted by themselves. It only refers to a distribution *dependent upon the drawing of a lottery,* over which the parties have no control. (*People* v. *American Art Union,* 7 N. Y. 240.)

And it has been further held that:

The act to prevent raffling and lotteries was intended to prohibit the sale of lottery tickets in the State, whether the lottery was established in the State or elsewhere. (*People* v. *Warner,* 4 Barb. 314 [1848].)

Playing '' policy '' by which one selects numbers and pays a certain amount in consideration of which the person to whom the money is paid engages to pay a prize if the numbers selected

are drawn in a lottery not conducted by him, in which he has no interest, has been held to be a lottery. (*Alvey* v. *McKinney,* 42 Hun 651 [1886], opinion *sub nom. Almy* v. *McKinney* in 5 N. Y. St. Rep. 267; *Wilkinson* v. *Gill,* 74 N. Y. 63 [1878].)

Policy, a scheme of chance where the player selected a number containing three figures which was written on a slip of paper and given with the amount bet to a collector, wherein the winning number was determined each day by chance — is a lottery. (*People* v. *Hines,* 284 N. Y. 93 [1940].)

Scheme whereby patron of theatre paid money and received ticket entitling him to witness motion picture and chances to win prize money held lottery. (*People* v. *Miller,* 271 N. Y. 44 [1936].)

In view of all of the above-cited cases and definitions can it be said that a " punch board " is a lottery, that it was the intention of the Legislature when they passed this statute that a " punch board " was a lottery?

It is the opinion of this court that a " punch board " is not a lottery, that it was not the intention of the Legislature to include "punch boards " in all of the statutes it passed against lotteries. " Punch boards " have been in existence well over at least twenty-five years and if it were the intent of the People of New York, through its Legislature, to make it unlawful to possess a " punch board " or to sell chances thereon for merchandise or money then in that event it would have been and would be a very simple matter to insert the words " punch boards " in the gambling statutes of the Penal Law.

Whether a " punch board " is a menace to the community, against public policy or immoral in and of itself, is not for this court to decide. It is not the function of a court to stretch the meanings of words in a statute beyond the normal conception of such words in order to establish a violation of such statutes because the act complained of could be considered against public policy or immoral in and of itself. Its decision must rest upon whether or not the defendant is guilty of the particular crime or misdemeanor with which he is being charged. In the instant case the defendant is being charged with offering for sale property dependent upon the drawing of a lottery. He is not charged with being in possession of " punch boards "; there is no statute therefore, under which he could be charged.

A village, town, city or State, through its particular governing body can pass an ordinance or law declaring a " punch board " or the possession thereof unlawful. This was done in

Iowa where the Legislature by inserting the words " punch boards " into gambling statutes recognizes " punch boards " as a gambling device. (*Parker-Gordon Importing Co.* v. *Benakis,* 213 Iowa 136, 143.)

It may be that selling chances on a " punch board " is gambling or betting, but it has been held that " gaming, betting and lotteries " are separate and distinct things. (*Commonwealth* v. *Kentucky Jockey Club,* 238 Ky. 739.)

It is therefore the judgment of this court that under existing law the information does not charge the defendant with the commission of a misdemeanor within the meaning of section 1376 of the Penal Law and the information is accordingly dismissed and the defendant discharged.