### UNITED STATES v. ROSENBLUM.

(Circuit Court, S. D. New York. March 9, 1903.)

1. MAILS—LOTTERIES—PRIZES—ADVERTISEMENT—CONSTRUCTION.

A circular offering prizes to persons who should estimate nearest to the number of cigarettes on which tax is paid during a certain month, as shown by the total sales of stamps by the United States Internal Revenue Department during that month, each estimate to be accompanied by 10 cigarette coupons inclosed in boxes of a particular brand of cigarettes, is not a lottery within Rev. St. § 3894, amended 1 Supp. Rev. St. 803 [U. S. Comp. St. 1901, .p. 2659], prohibiting the sending of any lottery, etc., through the mails.

Henry L. Burnett, U. S. Atty., and William S. Ball, Asst. U. S. Atty.

Ingraham, Root & Massey and Harrison J. Barrett, for defendant.

THOMAS, District Judge. The information charges that one Rosenblum, president of a corporation known as "Mozle Brothers," has violated section 3894, Rev. St., as amended 1 Supp. Rev. St. 803 [U. S. Comp. St. 1901, p. 2659], which, so far as here involved, is as follows:

"No letter, postal card or circular, concerning any lottery, so-called gift-concert, or other similar enterprise, offering prizes dependent upon lot or

---

¶ 1. Nonmailable matter relating to lotteries, see note to Timmons v. U. S., 30 C. C. A. 90.

chance * * * shall be carried in the mail or delivered at or through any post office or branch thereof, or by any letter-carrier."

The brief of the government states:

"The question seems to be whether or not the sending out of the circular is an enterprise offering prizes dependent upon lot or chance."

The circular in question is as follows:

"Mozle Bros.,
[Cut.]          "Makers of Highest Grade Turkish Cigarettes          [Cut.]
Possible.

"How many paper-wrapped cigarettes will the United States Internal Revenue Department collect taxes on during the month of October, 1902?

"$250.00 will be given to the persons whose estimates are nearest to the number of cigarettes—all kinds of paper-wrapped cigarettes (no matter what rate of tax they pay)—on which tax is paid during the month of October, 1902, as shown by the total sales of stamps made by the United States Internal Revenue Department during October, 1902.

"Distribution will be made in cash as follows:

| | |
|---|---|
| To the person estimating the closest........................... | $ 50 00 |
| To the two persons whose estimates are next closest, $25 each... | 50 00 |
| To the five persons whose estimates are next closest, $10 each.... | 50 00 |
| To the ten persons whose estimates are next closest, $5 each..... | 50 00 |
| To the fifty persons whose estimates are next closest, $1 each.... | 50 00 |
| Total ............................................. | $250 00 |

"In order to entitle you to make an estimate, your estimate must be accompanied by ten Mozle Bros. cigarette coupons (which will be hereafter packed with Mozle and Turkish Run cigarettes, and are themselves valuable for presents), and you are entitled to make one estimate for each ten Mozle Bros. cigarette coupons sent in. By sending in Mozle Bros.' cigarette coupons, in order to participate in this contest, you do not give up the value of these coupons as indicated on their faces.

"As information which may be of value in making estimates, the number of cigarettes for which stamps were purchased appears below: In October, 1900, 242,164,790 cigarettes; in October, 1901, 221,633,840 cigarettes; in January, 1902, 229,214,905 cigarettes; in February, 1902, 133,864,390 cigarettes; in March, 1902, 162,376,975 cigarettes; in April, 1902, 208,278,240 cigarettes; in May, 1902, 259,334,000 cigarettes.

"In case of tie estimates, the amount offered will be divided equally among those entitled to it. Distribution of the awards will be made as soon after November 1st, 1902, as the figures are obtainable from the Internal Revenue Department of the United States. $250, to make good this offer, has been this day deposited with the 11th Ward Bank, New York City.

"Write your full name and street address, plainly, on package containing coupons. The postage charges on the packages must be fully prepaid in order for your estimate to participate.

"All estimates under this offer, together with the coupon, must be forwarded before October 1st, 1902, to Mozle Bros., 104 Second Avenue, New York City.                                      Mozle Bros."

The question whether such an enterprise is dependent upon lot or chance was, upon similar states of fact, answered in the negative by Attorneys General Miller, Griggs, and Knox, and the ruling has been followed in numerous cases by the Assistant Attorneys General for the Post Office Department, to wit, by Assistant Attorney General Tyner in 1898, 1901, and 1902, and Assistant Attorney General Christiancy on two occasions in 1901. Of course, the original opinion of Attorney General Miller furnished a precedent for the guidance of the department of justice, and was observed by the assistants connected

with the Post Office Department. Such ruling is in accordance with the decisions in this country and England, with the single exception of Hudelson v. The State, 94 Ind. 426, 48 Am. Rep. 171. Such decisions are Hall v. Cox [1899] L. R. 1 Q. B. 198; Regina v. Dodds, 4 Ont. Rep. 390; Regina v. Jamieson, 7 Ont. Rep. 149; Dunham v. St. Croix Soap Mfg. Co., 34 N. B. 245; Stevens v. Cincinnati Enquirer Co. (Super. Ct. Cin., Ohio; 1903), 28 Ohio Law Bul. 235. The defendant also relies upon the decisions to the effect that the offer by a newspaper of a prize to the person who should name winning horses in a given race is not a lottery. Caminada v. Hulton, 60 L. J. (M. C.) N. S. 116 (1891); Stoddart v. Sagar [1895] L. R. 2 Q. B. 474; The defendant also invokes the cases relating to pools on horse races, to wit, People v. Reilly, 50 Mich. 384, 15 N. W. 520, 45 Am. Rep. 47; Reilly v. Gray, 77 Hun, 406, 28 N. Y. Supp. 811; People v. Fallon, 152 N. Y. 12, 46 N. E. 296, 37 L. R. A. 227, 57 Am. St. Rep. 492.

The supporting decisions first cited proceed upon the conception that "a lottery is a scheme by which some result is reached, by some action or means taken, and in which result man's choice or will has no part, nor can human reason, foresight, sagacity, or design enable him to know or determine such result until the same has been accomplished" (People v. Elliott [Mich.] 41 N. W. 916, 3 L. R. A. 405, 16 Am. St. Rep. 640); or, as stated by Smith, J., in Hall v. Cox, supra, "that, to constitute a lottery, it must be a matter depending entirely upon chance"; and that in enterprises similar to that involved in the action at bar, skill and judgment, based upon experience, knowledge, or ascertainment of facts related to the problem to be solved, are effective elements in the winning of the prizes. These cases are distinguished from Barclay v. Pearson [1893] L. R. 2 Ch. 154, where the scheme offered a prize to the person supplying the correct word omitted from a given sentence, which word had been selected arbitrarily by the promoter of the enterprise; and Hall v. Macwilliam, 65 J. P. 742 (King's Bench), where the award was dependent upon the guessing of certain spots in the newspaper, which had previously been selected arbitrarily, wherein it was considered that skill and judgment could play no part.

The question in this case is not, what does the maintenance of good morals demand, but what does the statute mean, and do the facts bring the present case within it? Ordinary respect for the opinion of three Attorneys General of the United States, and for the general current of authority in this country and England, should influence a trial court in the same direction. But independent consideration leads to the same result.

Each person pays to the author of the enterprise a sum of money for the privilege of competing for a prize offered by the latter, which prize is possibly, and perhaps presumptively, but not necessarily, paid from the general fund created by all the contributors. The contest is to determine who of the contributors can state with the greatest accuracy a fact only determinable with mathematical accuracy in the future, to wit, the number of cigarettes on which tax will be paid during a specified future month. The aggregate depends largely upon the total number of taxable cigarettes sold and prepared for sale, and

is assumed to be represented by the sales of revenue stamps during the month. In short, the number of stamps sold by the Internal Revenue Department during the month for the purpose of meeting taxes on cigarettes is the fact to be ascertained. But the number of cigarettes sold, or so far made ready for sale as to demand stamps, is the chief underlying fact. This fact is no artificial nor arbitrary creation. It will result from conditions known in their general nature, such as the abundance or scarcity of the product of which the subjects of the tax are chiefly composed, the consequent price to the consumer, the present extent and probable increase or decrease of the habit of using the article, and the stock customarily carried by manufacturers and dealers, of which some knowledge may be gained by economic statistics. Each salient condition upon which the aggregate sale depends is a subject of an intelligent study, that enables a skilled person to forecast the fact, with an accuracy in some palpable degree measured by his study and knowledge, and his skill in the use of such knowledge. It is quite unlikely that his study and inferences therefrom will be so thorough and accurate as to enable him to state the fact with mathematical correctness, nor does the enterprise demand this. He is required only to state it with an accuracy greater than his fellow competitors. The fact is certain, in the sense that it will exist, not because some person has secretly made it certain, but because there are recognized forces that will bring the sales to a certain limit, and a knowledge of these forces enables the contestants to approximate to their resultant. Assume that the figure 1,000 represents the fact. In the case of the lottery the number exists by a secret arbitrary selection, and no intellectual exertion on the part of the competitors can ascertain it. If any person draw the prize, it is by reason of a coincidence of numbers to which no one either intelligently contributes or seeks to contribute. The fact is not only beyond foreknowledge, but also beyond all effort at foretelling. The competitors idly await. The agencies that will cause a particular person to hold the concurring number exist, but are beyond human conception. No trace of them can be apprehended. Hence each contributor exposes his money to a hazard over which he can have no influence by the aid of intelligent selection. The choice is not aided by knowledge; it is not imperiled by ignorance. No competitor can assist or diminish his possibility of achievement. But enterprises like that at bar involve an economic fact somewhat similar and related to those of previous months and years, dependent in an essential part upon well-known laws of trade, production, consumption, habits of the people, and the like. The fact grows from laws, and from conditions upon which such laws act, both of which are to an extent known to some, and may be so known to all. After studying these laws and the subjects of their operation, each competitor, by the use of logical methods, is qualified to express a valuable judgment concerning the fact whereon the prize depends. It is urged that certainty cannot be attained. Truth is usually in some obscurity, but in this case it can be pursued, and a nearer approach to it gained, by the means stated. It cannot be attained in any degree by a guess, which is a conclusion expressed either without knowledge or the use of knowledge, if that be possible. A mere guess can gain

only what chance brings. It is obvious that an arbitrary selection of a number by a competitor, or a guess, would be absolutely futile. The contestant who relied upon chance opinion, unaided by judgment, might win the prize, but such result would not accord with reasonable expectation. Indeed, a guess proper could not be employed, as the data is furnished, which each mind would use intuitively or purposely, providently or carelessly, as a basis of judgment. But the mere fact that some might conclude indolently or rashly, or with whatever error or disregard of given and obtainable antecedent and present data, does not make the solution of the problem a matter of chance, for the opportunity for a rational judgment is at hand, if one have something of capacity and inclination to employ it. An opportunity is offered to gain a prize by those paying for the privilege of competing. The task is that one competitor shall foretell with greater accuracy than his fellow contestants the effect of conditions that have or may arise upon the consumption of tobacco in certain forms, and all are supplied with certain information that will aid in shaping the judgments to be given. The results in previous months or years are furnished. Chance has no part in designating the recipient, except so far as all judgments may be wrong by reason of unknown or improperly used data.

In this independent discussion nothing is added to the amply illustrated argument in previous decisions, upon whose authority there was inclination to base the present determination. However, so much has been repeated, in a somewhat different form, for the purpose of stating simply the grounds of an obviously correct conclusion.

The demurrer will be sustained.