### WAITE v. PRESS PUB. ASS'N.

#### (Circuit Court of Appeals, Sixth Circuit. June 26, 1907.)

#### No. 1,639.

Lotteries—Guessing Contest—Validity.

A guessing contest prior to the presidential election of November, 1904, by which defendant agreed to give $10,000 to the person who would make the nearest correct estimate of the total popular vote to be cast for the office of President of the United States, on November 8, 1904, and $5,000 for the second nearest correct estimate, persons filing guesses being required to pay small sums as a subscription to a periodical named in the advertisement, constituted a lottery in violation of the federal laws and also of Comp. Laws Mich. § 11,344, providing that every person who shall set up or promote within the state any lottery or gift enterprise for money, or shall dispose of any property, real or personal, goods, chattels, or merchandise, or any valuable thing, by way of lottery or gift enterprise, shall be punished, etc.

[Ed. Note.—What constitutes lottery, see note to MacDonald v. United States, 12 C. C. A. 346.]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Bernard B. Selling, for plaintiff in error.

George B. Perry, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This case involves the validity of what is popularly known as a "guessing contest." It was inaugurated by the publication, prior to the election to be held on November 8, 1904, for President of the United States, of certain advertisements by the Press Publishing Association, the defendant below, in which certain rewards or prizes were offered to those persons who, prior to such election, should submit to the Press Publishing Association the nearest correct estimates of the total popular vote to be cast for the office of President of the United States, on the day of the election, and at the same time should pay a certain sum as the subscription to the periodical named in the advertisement. The suit was brought to recover the sum of $10,000 offered for the nearest correct estimate, and the sum of $5,-000 offered for the second nearest correct estimate of such vote, the two persons who, under the terms of the advertisements, submitted these estimates, having assigned their rights to the plaintiff. The correct total popular vote cast for the office of President of the United States on the 8th day of November, 1904, was 13,525,595. On or about November 1, 1904, one John Ruf, Jr., a citizen of the state of Illinois, submitted to the Press Publishing Association, as his estimate, 13,-525,606, and along with it paid the sum of $5, being his subscription to a periodical mentioned in the advertisement. On or about June 6, 1904, one E. T. Battrick, a citizen of the state of Ohio, submitted to the Press Publishing Association, as her estimate, 13,525,608, and along with it paid the sum of $2 as her subscription to a periodical mentioned in the advertisement. The estimate submitted by John Ruf, Jr., proved to be the nearest correct estimate of such total popular vote, and that submitted by E. T. Battrick the second nearest correct estimate, and, according to the terms of the advertisements, the first was entitled to the reward of $10,000, and the second to the reward of $5,000. Suit was brought by the plaintiff as assignee of the successful estimators, and was decided by the court below upon the statement of counsel for the plaintiff in which were embodied the foregoing facts. The court held that the scheme outlined, which provided for the distribution of large sums of money dependent upon the nearest correct estimates of the total popular vote for President, was in the nature of a lottery, or gift enterprise against the policy of the laws of the United States, and in violation of the laws of Michigan.

Several years ago it was a doubtful question whether a so-called guessing contest was valid or not. Three Attorneys General of the United States (Miller, Griggs, and Knox), had, in formal opinions, sustained the validity of similar contests, and, following them, Judge Thomas, in the case of United States v. Rosenblum (C. C.) 121 Fed. 180, had refused to hold such a contest illegal, and had sustained a demurrer to an information against the president of a corporation then engaged in carrying on one. These rulings were in accordance with the trend of authorities in this country and England, the cases being

cited in the opinion of Judge Thomas (C. C.) 121 Fed. 182. The exception to be noted was the case of Hudelson v. State, 94 Ind. 426,. 48 Am. Rep. 171, in which the Supreme Court of Indiana held that a contest dependent upon the guessing of the nearest to the number of beans contained in a glass globe was a lottery or gift enterprise. The cases which sustained the validity of the various guessing contests all held that, since the correct number either did or would exist, more or less skill and judgment could be exercised in guessing it, and therefore the estimate of the nearest number to the correct one could not properly be considered a matter of mere chance. On the other hand, in the Hudelson Case, the court, for the first time, drew attention to the fact that, while the number of beans in the glass globe would be fixed and definite, the ascertainment of that number could be nothing other than a mere matter of guessing, for it was impossible under the circumstances to ascertain the information upon which a correct estimate could alone be made. Subsequent to the decision in the Hudelson Case came that of the Supreme Court of the United States in Clearing House v. Coyne, 194 U. S. 497, 24 Sup. Ct. 789, 48 L. Ed. 1092,. and People v. Lavin, 179 N. Y. 164, 71 N. E. 753, 66 L. R. A. 601. In the Coyne Case, the court sustained a fraud order issued by the Post-Office Department, directing the rejection of the mail of "The Public Clearing House" on the ground that it was a fraudulent scheme and constituted a lottery. It is unnecessary to describe the details of the scheme; the facts will be found in the opinion. The court, speaking by Mr. Justice Brown, disposes of the matter by saying:

"The scheme lacks the elements of a legitimate business enterprise, and we think there was no error in holding it to be a lottery within the meaning of the statute."

This case was followed by Pref. Mercantile Co. v. Hibbard (C. C.) 142 Fed. 877, decided by Judge Lowell.

In the Lavin Case, 179 N. Y. 164, 71 N. E. 753, 66 L. R. A. 601,. the scheme provided for the distribution of money among those purchasers of certain brands of cigars who should estimate most closely the number of cigars of all brands upon which the government would collect taxes during the month named. Discussing what constitutes chance, Judge Cullen, speaking for the court, says (page 168 of 164 N. Y., page 754 of 71 N. E. [66 L. R. A. 601]):

"'It is strictly and philosophically true in nature and reason that there is no such thing as chance or accident; it being evident that these words do not signify anything really existing, anything that is truly an agent or cause of any event; but they signify merely men's ignorance of the real and immediate cause. But though nothing occurs in the world as a result of chance, the occurrence may be a matter of chance to the observer from his ignorance of antecedent causes or of the laws of their operation.'"

The court refers at some length to the Coyne Case, 194 U. S. 497,. 24 Sup. Ct. 789, 48 L. Ed. 1092, and reaches the conclusion that the scheme before it falls far within the requisites of a lottery as defined in that case, under a statute very similar to the New York one. The two cases referred to, the Coyne Case and the Lavin Case, are cited by Attorney General Moody in his opinion of November 28, 1904 (25 Opinions of Attorneys General, 286), as authority for the reversal of the

opinions of his predecessors holding that "guessing contests" were not within the prohibition of the federal statutes. The schemes presented to Attorney General Moody for his decision were dependent, the one upon estimates of the total number of paid admissions to the World's Fair at St. Louis, and the other upon estimates of the total vote cast for President in 1904. The conclusions he reached were as follows:

"Conceding that the estimates in such a contest (the World's Fair contest) will be to some extent affected by intelligent calculation, the conclusion is, nevertheless, irresistible that it is largely a matter of chance which competitor will submit the nearest correct estimate. The estimates cannot be predicated upon natural and fixed laws, since the total number of admissions may be affected by many conditions over which the participants in this scheme have no control and cannot possibly foresee." Page 290.

And, again:

"Neither of these contests is a 'legitimate business enterprise.' In each thousands invest small sums in the hope and expectation that luck will enable them to win large returns. A comparatively small percentage of the participants will realize their expectations, and thousands will get nothing. They are, in effect, lotteries, under the guise of 'guessing contests.'" Page 291.

The last case to which we care to call attention upon the general question is that of Stevens v. Times Star, 72 Ohio St. 112, 73 N. E. 1058, 106 Am. St. Rep. 586. In this case, the Supreme Court of Ohio passed upon a number of guessing contests carried on by newspapers in Ohio. They involved the total vote for a state officer at a coming state election. Respecting the nature of these contests, the court said (page 150 of 72 Ohio St., page 1061 of 73 N. E. [106 Am. St. Rep. 586]):

"It is true that one acquainted with the results of the elections of the state in previous years and educated in politics would have some advantages over one ignorant in those respects, yet it must be apparent even to a casual observer that the result would depend upon so many uncertain and unascertainable causes that the estimate of the most learned would be after all nothing more than a random and undecisive judgment. In the sense above indicated there is an element of skill, possibly certainty, involved, but it is clear that the controlling predominating element is mere chance. It was a chance as to what the total vote would be; it was equally a chance as to what the guesses of the other guessers would be."

It only remains to consider whether this contest which clearly violated the federal laws and those of the states that we have mentioned also violated the laws of Michigan. The court below held it did. The Michigan statute (section 11,344, Comp. Laws 1897) provides that:

"Every person who shall set up or promote, within this state, any lottery or gift enterprise for money, or shall dispose of any property, real or personal, goods, chattels or merchandise, or valuable thing, by the way of lottery or gift enterprise, etc., shall be punished," etc.

In the case. of People v. Elliott, 74 Mich. 264, 267, 41 N. W. 916, 3 L. R. A. 403, 16 Am. St. Rep. 640, a lottery was defined as "a scheme by which a result is reached by some action or means taken, and in which result man's choice or will has no part, nor can human reason, foresight, sagacity, or design enable him to know or determine such result until the same has been accomplished." The scheme used in this

case was what is called "policy." The court held it was "the obtaining of money or property by such means that our statute was intended to prevent and punish," and constituted a lottery.

In the case of People v. McPhee, 139 Mich. 687, 103 N. W. 174, 69 L. R. A. 505, it was held that a so-called "Tailor Suit Club," the members of which contributed $1 each per week and had weekly drawings, through which a member might have received a suit of clothes costing about $20 for $1, was a lottery under the Michigan law. Respecting this scheme, the court said (page 693 of 139 Mich., page 176 of 103 N. W. [69 L. R. A. 505]):

"It was calculated to, and did, appeal to the gambling propensity of men, was within the mischief at which the legislation is aimed, was within the terms of the statute, and, in our opinion, a disposition of property by way of lottery."

We think, for the reasons given by the courts in the cases from which we have already quoted, the guessing contest before us came within the terms of the Michigan law and the mischief at which it was aimed. At the time the estimates on which this suit is based were submitted, the vote was yet to be cast; indeed, on June 6, 1904, when the Battrick estimate was sent in one of the leading candidates for president had not yet been nominated. The number of persons who would be qualified to vote at the election, and the number who would cast votes which would be counted, were not only undetermined but impossible of ascertainment at the time the estimates were submitted. A thousand causes might, in one way or another, intervene to affect the total vote cast, so that at the best an estimate, if at all near the total vote cast, would be but a lucky guess. In so great a vote the necessary margin of chance would be so large that no element of skill or experience could operate to predict the result. While one skilled in national politics and conversant with existing conditions might make a closer estimate than one wholly ignorant, yet, after all, the successful persons in such a contest would be but makers of lucky guesses in which skill and judgment could play no effective part.

The judgment of the lower court is affirmed.