Argued 30 January; decided 12 March, 1900.

**EX PARTE KAMETA.**

[60 Pac. 394.]

36   251
44   446

1. CONSTRUCTION OF CITY CHARTER—GAMING.—In Portland City Charter (Laws, 1893, p. 820, ₴ 36, subd. 5), granting the council authority to prevent and suppress gaming and gambling houses, the word "gaming" is used as a substantive, and not an adjective.

2. LOTTERY—GAMING.—Conducting a lottery is gaming, within Portland City Charter (Laws, 1893, p. 820, ₴ 36, subd. 5), authorizing the prevention and suppression of gaming.

3. CITY ORDINANCE—BURDEN OF PROVING INNOCENCE.—A city ordinance making it unlawful for any person to have in his possession any lottery ticket, unless it be shown that such possession is innocent, or for a lawful purpose, is void, since it puts on defendant the burden of proving his innocence.

From Multnomah: MELVIN C. GEORGE, Judge.

*Habeas corpus* by M. K. Kameta against D. M. Mc-Lauchlan, Chief of Police of the City of Portland. From a judgment discharging petitioner, defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Joel M. Long*, Corporation Counsel, and *Ralph R. Duniway*, with an oral argument by *Mr. Duniway*.

For respondent there was a brief over the names of *Bernstein & Cohen* and *J. J. Fitzgerald*, with an oral argument by *Mr. Alex. Bernstein*.

MR. JUSTICE BEAN delivered the opinion.

This is an appeal from a judgment in a *habeas corpus* proceeding. In May, 1895, the Common Council of the City of Portland passed Ordinance No. 10,259, "to prohibit the sale of or having in possession lottery tickets or tools or instruments used or intended to be used in making lottery tickets," which provides as follows:

"Section 1. That it shall be unlawful for any person within the corporate limits of the City of Portland to sell

or offer for sale any lottery ticket, certificate, paper or instrument purporting, or representing, or understood to be, or to represent, any ticket, chance, share, or interest in, or depending upon the event of, any lottery. That it shall be unlawful for any person to have in his or her possession, unless it be shown that such possession is innocent, or for a lawful purpose, any lottery ticket, certificate, or paper as aforesaid, or any tool, instrument, stamp, or device used or intended to be used in or for contriving, setting up, preparing, or drawing any lottery, or preparing for sale or distribution any lottery ticket or tickets.

"Sec. 2. Any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and on conviction thereof before the municipal court shall be punished by a fine of not less than twenty dollars, and not more than two hundred dollars, or by imprisonment not less than ten days nor more than ninety days."

The petitioner was arrested under the ordinance in September, 1899, on a complaint charging that within the corporate limits of the city he "did willfully and unlawfully have in his possession, for an unlawful purpose, a lottery ticket and tickets, tools, instruments, stamps, and devices used and intended to be used in contriving, preparing for sale, and distribution of said lottery tickets, * * * whereby the peace and quiet of said city was disturbed ; contrary to the ordinance in such case made and provided." Upon his trial he was convicted, and sentenced to pay a fine of $75, in default of which he was committed to the city jail until payment thereof, not to exceed thirty-seven and one-half days. He was thereafter discharged in a proceeding on *habeas corpus*, and hence this appeal.

1. The claim for the petitioner is that the ordinance is void, because (1) of a want of power in the city to enact it ; and (2) the particular provision which he is charged

with violating puts upon a defendant the burden of show-
ing his innocence, and is, therefore, in violation of his
constitutional rights.   By the charter in force at the time
of the passage of the ordinance it is provided that "the
council has power and authority," within the city, "to
prevent and suppress gaming and gambling houses, or
places where any game in which chance predominates is
played for anything of value, and to punish any person
who engages in such game or keeps or frequents such
houses :" Laws, 1893, p. 820, § 36, subd. 5.   It is con-
tended that this provision of the charter does not authorize
or empower the city to prevent and suppress gaming as a
substantive offense, but only gaming or gambling houses ;
but, if it is held otherwise, the ordinance nevertheless is
void, because a lottery is not gaming, within the mean-
ing of the charter.  We are quite well satisfied the word
"gaming" is used in the charter as a substantive, and
not as an adjective, and that the city is vested with power
to punish and suppress gaming as a substantive offense.
In the construction of the charter the court ought not to
lose sight of its object and purpose, and the evil it was
intended to authorize the city to suppress.   As said by
Judge Deady, in construing the same charter provision
in *Re Lee Tong*, 18 Fed. 253, 257 :   "It is evident that
there is as much propriety and necessity for giving the
council power to suppress 'gaming' as a 'gambling house.'
They are simply different phases of the same evil ; the
one being an end, and the other a means."   So that we
think the first objection is not well taken.

2.   The next question, however, presents more diffi-
culty.   The decisions as to what constitutes gaming have
not been altogether uniform, but it is generally defined
as "an agreement between two or more persons to risk
money on a contest or chance of any kind, where one
must be loser and the other gainer" (*Bell* v. *State*, 5 Sneed,

507, 509 ; 1 Bouvier, Law Dict.; 8 Am. & Eng. Enc. Law [1 ed.], 1033) ; and a lottery is defined as a scheme for the "distribution of prizes by chance" (*Governors of the Almshouse of N. Y.* v. *American Art Union*, 7 N. Y. 228), or "a sort of gaming contract, by which, for a valuable consideration, one may, by favor of the lot, obtain a prize of a value superior to the amount or value of that which he risks" (13 Am. & Eng. Enc. Law [1 ed.], 1164 ; 1 Bouvier, Law Dict.; and *Bell* v. *State*, 5 Sneed, 507). Mr. Justice GRIER says in *Phalin* v. *Virginia*, 49 U. S. (8 How.) 163, "Experience has shown that the common forms of gambling are comparatively innocuous when placed in contrast with the widespread pestilence of lotteries. The former are confined to a few persons and places, but the latter infests the whole community ; it enters every dwelling ; it reaches every class ; it preys upon the hard earnings of the poor ; it plunders the ignorant and simple." And Mr. Justice CAMPBELL says : "No other form of gambling operates as extensively in its dealings, or demoralizes so many people :" *People* v. *Reilly*, 50 Mich. 384, 388 (45 Am. Rep. 47, 15 N. W. 522). As a result, there is now scarcely a state in the Union where lotteries are tolerated, and the mails are closed against them by act of congress. That a lottery is a species of gaming is settled by authority, "if, indeed," as said by BARCLAY, C. J., in *Roselle* v. *Farmers' Bank*, 141 Mo. 42 (64 Am. St. Rep. 501, 39 S. W. 275), "authority be needed for so clear a proposition :" *Stone* v. *Mississippi*, 101 U. S. 814 ; *Douglas* v. *Kentucky*, 168 U. S. 488 (18 Sup. Ct. 199), and authorities heretofore cited. It was accordingly held in *Bell* v. *State*, 5 Sneed, 507, and *Eubanks* v. *State*, 3 Heisk. 488, that the defendants were properly convicted of gaming upon proof that they had been conducting a lottery. It is true, a distinction is made in the statutes of this and most of the states between certain

species of gaming and lotteries, and different punishments are provided for the different offenses. It is, therefore, sometimes held that conducting a lottery is not unlawful gaming, within the meaning of a local statute, as in *Temple* v. *Commonwealth*, 75 Va. 892. But we are dealing here with the simple question as to whether a lottery is gaming in a general sense, and whether it comes within the provisions of a municipal charter authorizing the municipality to prevent and suppress gaming; and our conclusion is that under the authorities it must be so held.

3.   The objection, however, that the ordinance in question is void because it assumes to overthrow the presumption of innocence, and put upon the defendant the burden of showing that his possession of lottery tickets is lawful or innocent, is well taken.   Such an objection was held fatal to an ordinance quite identical in language with the one before us by the Supreme Court of California in the case of *In re Wong Hane*, 108 Cal. 680 (49 Am. St. Rep. 138, 41 Pac. 693), and the reasoning of the court in that case being, in our opinion, conclusive, renders unnecessary any further examination of the question by us.   It follows, therefore, that the judgment of the court below must be affirmed, and it is so ordered.      AFFIRMED.