BROOKLYN DAILY EAGLE v. VOORHIES, Postmaster.

(Circuit Court, E. D. New York.  September 13, 1910.)

1. POST OFFICE (§ 26*)—EXCLUSION OF MATTER FROM MAILS—POWER OF COURTS TO REVIEW ORDER.

A federal court of equity has jurisdiction of a suit to determine whether or not the matter because of which it is proposed to exclude a newspaper from the mails has been legally held to be unmailable by the Postmaster General, under the statutes of the United States, and if his action is found to be unauthorized to enjoin the exclusion of such paper.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 26.*

Nonmailable matter, see note to Timmons v. United States, 30 C. C. A. 79.]

2. POST OFFICE (§ 34*)—MAILABLE MATTER—ADVERTISEMENT OF LOTTERY.

A newspaper advertisement offering a prize for the best essay on the name of a certain breakfast food to be judged by three persons named, and each essay when submitted to be accompanied by three labels from packages of such food, may or may not be an advertisement of a lottery which will render the newspaper unmailable under Rev. St. § 3894 (U.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

S. Comp. St. 1901, p. 2659), depending on whether or not the prize is "dependent upon lot or chance." To escape such condemnation the offer must be made and carried out in good faith, and the prize awarded on the merits, and the advertisement should contain a sufficiently definite statement of what the word "best" means as used therein to advise competitors of the standard of comparison to be applied by the judges.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 34.*]

3. LOTTERIES (§ 3*)—ELEMENTS.

The three necessary elements of a "lottery" are the furnishing of a consideration, the offering of a prize, and the distribution of the prize by chance rather than entirely upon a basis of merit.

[Ed. Note.—For other cases, see Lotteries, Cent. Dig. § 3; Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 5, pp. 4245–4252; vol. 8, pp. 7710–7711.]

In Equity. Suit by the Brooklyn Daily Eagle against Edward W. Voorhies, as Postmaster of the United States Post Office in the Borough of Brooklyn, City of New York. Decree for complainant.

Samuel T. D. Jones, for complainant.

William J. Youngs, U. S. Atty., and William Austin Moore, Asst. U. S. Atty., for defendant.

CHATFIELD, District Judge. The Brooklyn Daily Eagle has filed a bill in equity seeking to restrain the postmaster of Brooklyn from refusing to accept as second-class mail matter the editions of that paper, if those editions contain the advertisement of a contest in which prizes are to be given for the "best" compositions upon the name of a certain breakfast food. Each essay is to be accompanied when sent in with three labels cut from packages of this food, and the essays are to be judged by three gentlemen of well known and indisputable standing from a literary standpoint.

The defendant has admitted the facts, but has offered two objections to the granting of the relief. The first objection is that the contest proposed is a lottery. The other objection raised is that the court has no jurisdiction, inasmuch as the defendant claims that he, as postmaster, and his superior, the Postmaster General, under whose instructions the case shows that he is acting, are executive officers of the government, and that the question of all use of the mails is vested in their discretion; such discretion not being subject to review by the courts.

The defendant has cited in support of this the provisions of sections 3929 and 4041, Rev. St., as amended by sections 2 and 3, respectively, of Act Cong. Sept. 19, 1890, c. 908, 26 Stat. 466 (U. S. Comp. St. 1901, pp. 2686, 2749), and Act Cong. March 2, 1895, c. 191, 28 Stat. 963 (U. S. Comp. St. 1901, p. 3178), under which the Postmaster General, after a hearing as prescribed in the statute, may find that the particular use of the mails would tend to defraud or be a lottery, and compel a cessation of that use by the parties responsible therefor; the mail matter or money being returned to the sender.

This statute does not cover the present case, for the mails have not been used, the Postmaster General has not found any use to be con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ducting a lottery, and has made no order that any particular use of the mail by any person be prevented for such a reason. He has only instructed the postmaster of Brooklyn to take out of the mails, or to refuse to accept for delivery through the mails, copies of the newspaper in question, if it shall contain what the Postmaster General assumes will be an advertisement of a lottery and what the complainant stated it intended to print and offer for transmission. This instruction is given under the regulations by which the postmaster is authorized to submit doubtful mail matter to the Postmaster General for appropriate action, but in the present case the submission has been made of proposed, rather than offered, second-class mail.

With the motive for these instructions no fault can be found, yet there would seem to be no question that the United States courts have the authority under the statutes and Constitution to determine whether or not the Postmaster General or the postmaster of Brooklyn is acting within the authority given them by act of Congress (for they have no other authority) in administering the offices which they hold and in carrying out the provisions of those statutes. School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 Sup. Ct. 33, 47 L. Ed. 90; Houghton v. Payne, 194 U. S. 88, 24 Sup. Ct. 590, 48 L. Ed. 888; Bates & Guild Co. v. Payne, 194 U. S. 106, 24 Sup. Ct. 595, 48 L. Ed. 894. Such a determination also involves passing upon the statutes themselves, i. e., as to whether they as a matter of law cover the facts of the particular case. School of Magnetic Healing v. McAnnulty, supra, at page 107, of 187 U. S., 23 Sup. Ct. 33, 47 L. Ed. 90. These cases also approve of the practice of bringing a bill in equity to prevent a threatened wrong, when the sole question is as to whether or not the matter because of which the newspaper is to be excluded from the mails has been legally held by the Postmaster General unmailable under the statutes of the United States. Hence we are asked to consider whether in this particular case the advertisement in question would be an advertisement of a lottery, under the language of section 3894, Rev. St. (U. S. Comp. St. 1901, p. 2659), which is as follows:

"Nor shall any newspaper, circular, pamphlet, or publication of any kind containing any advertisement of any lottery or gift enterprise of any kind offering prizes dependent upon lot or chance, * * * be carried in the mail or delivered by any postmaster or letter-carrier. Any person who shall knowingly deposit or cause to be deposited, or who shall knowingly send or cause to be sent, anything to be conveyed or delivered by mail in violation of this section, or who shall knowingly cause to be delivered by mail anything herein forbidden to be carried by mail, shall be deemed guilty of a misdemeanor, and on conviction shall be punished," etc.

It has been held in numerous cases, such as Waite v. Press Publishing Association, 155 Fed. 58, 85 C. C. A. 576, 11 L. R. A. (N. S.) 609, Hudelson v. State, 94 Ind. 426, 48 Am. Rep. 171, U. S. v. Wallis (D. C.) 58 Fed. 942, and Horner v. U. S., 147 U. S. 449, 13 Sup. Ct. 409, 37 L. Ed. 237, that the three necessary elements of a "lottery" are the furnishing of a consideration, the offering of a prize, and the distribution of the prize by chance rather than entirely upon a basis of merit.

The question of consideration does not mean that pay shall be directly given for the right to compete. It is only necessary that the person entering the competition shall do something or give up some right. The

acquisition and sending in of labels is sufficient to comply with that requirement. Nor does the benefit to the person offering the prize need to be directly dependent upon the furnishing of a consideration. Advertising and the sales resulting thereby, based upon a desire to get something for nothing, are amply sufficient as a motive.

The contest suggested also involves the giving of prizes, and hence the only question at issue is whether the distribution of these prizes would depend solely upon chance. As to this it is impossible upon the pleadings to determine conclusively. The complainant alleges that the advertisement was intended to solicit essays which should be judged from the standpoint of literary merit, and alleges that the judges were expected to and would honestly compare the essays submitted.

The defendant, admitting the allegations of the complainant in so far as the intentions of the parties are concerned and the good faith thereof, alleges that it is evident upon the face of the advertisemnt that this good faith might not or need not necessarily be carried out, and that therefore the contest would result in a distribution of prizes by chance, and such a distribution would be a lottery, citing the case of State v. Shorts, 32 N. J. Law, 398, 90 Am. Dec. 668.

The government also contends that inasmuch as the advertisement does not specifically say that the essays shall be judged because of literary merit, but, on the other hand, offers a prize solely for the "best" essay, which might be best written, best expressed, most persuasive, longest, shortest, or best from any other standpoint, the judging would depend upon the whim of the judges, and not upon their application of any recognized standard.

It must be held that to offer a prize for the "best" essay might be a lottery, if the persons are not induced to compete with some definite statement of what the word "best" means. But a distinction as to the methods of the judges is academic, for if the contest be honestly carried on (and this is admitted), and the best essay from any definite known standpoint selected, such competition would not seem to be in any sense a lottery. The wording of the suggested advertisement is disconnected and does not definitely say that the merits of the breakfast food, rather than its title, are to be extolled; but the general sense indicates that literary merit for advertising purposes, as it might appear to the opinions of the three judges, would be the standard of judging.

The only relief possible, therefore, would seem to be an injunction in alternative language to the effect that if the Brooklyn Daily Eagle publishes and seeks to mail an advertisement which does not appear on its face to be, or does not prove in practice to be, a lottery within the limits of this decision, the postmaster should be enjoined from refusing to accept the papers for transportation by mail, but that if the advertisement in question shall be so worded as to constitute a lottery, or is so conducted as to accomplish a lottery, then the injunction should be vacated. In the last-mentioned case, the provisions of the criminal statute would also apply.

The present action is substantially an attempt to have the court answer an academic question. It has been brought in such a way that the question must be answered; but the court cannot act as adviser of the complainant in determining how far the complainant may go before

it will offend the provisions of the criminal statute, and the court will only enjoin the defendant from refusing to accept the particular advertisement of a contest, to be judged from a definite standpoint. The wording of any advertisement or the precise application of this decision cannot be determined in anticipation of every possible change which may be made in the language of the advertisement itself. As was said in the case of School of Magnetic Healing v. McAnnulty, supra, the defendant will not be precluded from showing on the merits at a trial (which could be had upon an indictment if the grand jury finds an apparent violation of the statute) that the scheme or plan as worked out or as advertised through the mails is really a lottery; but on this record, with good faith admitted and a bona fide contest being planned for a competition in essay writing, the mere fact that it is an advertising scheme does not make the plan a lottery.