Submitted on briefs October 13, affirmed November 24, 1925.

# NATIONAL THRIFT ASSOCIATION *v.* W. E. CREWS, CORPORATION COMMISSIONER.

## (241 Pac. 72.)

**Lotteries — Scheme for Sale of Tickets and Distribution of Cash Prizes to Ticket-holders by Vote Held in Violation of "Lottery" Law.**

A contract, whereby, on sale of 25,000 tickets at $1 each, a company agreed to distribute $15,000 in cash in various amounts to ticket-holders to be determined by votes cast by ticket-holders, is in violation of law against "lotteries," the essential elements of which are consideration, prize and chance, and fact that winners are determined by number of votes received does not eliminate element of chance.

---

Lotteries, 38 **C. J.**, p. 289, n. 23, p. 290, n. 31, p. 294, n. 81, p. 305, n. 42.

· From Marion: L. H. McMAHAN, Judge.

In Banc.

ʹAFFIRMED.

For appellant there was a brief over the name of *Mr. H. ·E. Slattery.*

For respondent there was a brief over the names *of Mr. I. H. Van Winkle,* Attorney General, and *Mr. Willis S. Moore,* Assistant Attorney General.

BELT, J.—This is a *mandamus* proceeding to compel the corporation commissioner of this state to issue a dealer's permit to the plaintiff authorizing it to sell certain securities. A demurrer was sustained to the alternative writ. Plaintiff refused to plead further and judgment was entered dismissing the action. The writ, so far as material to a consideration

---

1. What constitutes lottery, see notes in 16 **Am. St. Rep.** 42; 1 Ann. Cas. 911; Ann. Cas. 1917D, 177.
Voting contest as lottery, see note in **Ann. Cas.** 1915B, 172. See, also, 17 **R. C. L.** 1222, 1231.

of this cause, recites that the plaintiff corporation made application to defendant for permission to sell contracts, of which the following is a copy:

"Class C.                                          No. ——

"Thrift Ticket
"Issued by the
"National Thrift Association,
"Eugene, Oregon.

"For the consideration of the sum of one dollar paid by —— of —— hereinafter known as the ticket holder, the National Thrift Association, a corporation, duly organized under the laws of the State of Oregon, hereby agrees to pay unto such persons whomsoever as shall be selected by the vote of the holders of this and similar tickets, the sums of money herein specified, subject to the conditions on the back hereof.

"This thrift ticket may be renewed monthly upon the payment of one dollar to the association by the holder thereof.

"For every unit of twenty-five thousand tickets in force,

     1 shall be paid $5,000.00 cash
     1 shall be paid $ 500.00 cash
    30 shall be paid $  50.00 cash each
    50 shall be paid $  25.00 cash each
   100 shall be paid $  10.00 cash each
   150 shall be paid $   5.00 cash each
  1250 shall be paid $   2.00 cash each
  2500 shall be piad $   1.00 cash each,

and these sums shall be paid each month.

"In witness whereof, the association has caused this ticket to be executed by its duly appointed officer.

"NATIONAL THRIFT ASSOCIATION,
"By ——————————,
"President."

On the back of which appears:

"On the first day of each month at 10:00 o'clock A. M., an election shall be held by the ticket holders

116 Or.—23

at the home office of the National Thrift Association in Eugene, Oregon, to determine by their votes the names of the persons to whom the said association shall pay the sums of money hereinbefore specified. Each ticket holder may vote in person, by mail, or by proxy one vote for each ticket held; and in the event that he does not so vote, the ticket holder hereby directs the president of the said association to vote his ticket at said election.

"Immediately after the said election the association agrees to pay any person receiving the highest number of votes the greatest sum of money hereinbefore mentioned, and to the person receiving the next highest number of votes the next greatest, and so on.

"If there is a fractional part of a unit of ticket in force, payments shall be made ratably thereon."

Among other things the written application of plaintiff stated that the corporation had assets of $1,600 and no debts. It appears from the writ that the corporation commissioner refused to grant the dealer's permit, stating, "Whether intended or not, the securities offered are not free from the possibility of working a fraud upon the purchaser. There is no assurance that the purchasers of the securities would be protected in any form whatever for their payments made. * * *" It is contended by respondent on appeal that the contract which plaintiff desired to sell to the public is in the nature of a lottery and that the application was properly denied for the additional reason as above given by the commissioner.

Does the sale scheme proposed by plaintiff violate the law against lotteries? For various definitions of the term "lottery" see the much cited case of *Quatsoe* v. *Eggleston,* 42 Or. 315 (71 Pac. 66). Bishop on Statutory Crimes (2 ed.), Section 952, defines it thus:

A lottery is "any scheme whereby one, on paying money or other valuable thing to another becomes entitled to receive from him such a return in value, or nothing, as some formula of chance may determine."

The essential elements of a lottery are: (1) Consideration; (2) prize; and (3) chance: 17 R. C. L. 1222, citing many cases. Appellant concedes that the proposed business scheme includes the first two elements above stated, but earnestly insists it does not involve "chance" as contemplated by law. In determining whether the contract is in the nature of a lottery we look, not to the name, but the game. Courts will not tolerate subterfuge, however ingeniously may be the scheme devised to evade the law. Does the sale of these "thrift tickets" tend to arouse the gambling instinct? Is the element of chance involved? Let us examine the contract. Assume that 25,000 persons each paid one dollar in order to provide funds for a full monthly distribution. Under the terms of this contract $15,000 would be paid out in prizes, the balance of $10,000 going to the company. When the money is distributed, 2,500 purchasers get their money back, 1,582 receive something in excess of what they paid, and 20,918 do not receive anything. This scheme reminds us of "Get-Rich-Quick Wallingford." It certainly does not have the appearance of a legitimate business enterprise. If, instead of voting these tickets, they were marked with numbers and drawn from a box to determine who would receive the money, would it be contended that the law against lotteries was not violated? The mere fact that the winners are determined by the number of votes received does not, in this particular scheme, eliminate the element of chance and make it less evil in its tendencies. It is a cleverly designed

scheme to evade the law against lotteries and must not be countenanced: *State* v. *Lipkin,* 169 N. C. 265 (84 S. E. 340, Ann. Cas. 1917D, 137, L. R. A. 1915F, 1018). The corporation commissioner would have been derelict in his duty had he permitted the sale of such uncertain and hazardous securities. The demurrer to the writ was properly sustained, and the judgment dismissing the action is affirmed.                AFFIRMED.