13 Cal.App.2d Supp. 755 (1936)
THE PEOPLE, Respondent,
v.
ROBERT W. REHM, Appellant.
California Court of Appeals. 
April 18, 1936.
 Benjamin Elconin for Appellant.
 Ray L. Chesebro, City Attorney, Newton J. Kendall, Assistant City Attorney, and John L. Bland, Deputy City Attorney, for Respondent.
 Bishop, J.
 Appellant was charged with the offense of having in his possession a lottery ticket and a ticket purporting and understood to be a share and interest in a lottery. The only debatable question presented by this appeal from the judgment following his conviction, is whether or not the enterprise, to which the ticket in appellant's possession opened the door, was proved to be a lottery. It is our opinion that the explanation of the scheme given by appellant's own witness, accepted at its face value, proved it to be a lottery, and the judgment should, therefore, be affirmed.
 This witness testified that in September he had been appointed local agent for the Grand National Treasure Hunt of New York City. Based on the instruction he had received by mail from headquarters, he had passed on to the agents he had employed, one of whom was the appellant, and he gave from the witness stand, the following understanding of the rules of the "hunt". Tickets, such as were found in the possession of the appellant, were to be sold for a dollar apiece. A ticket permitted the holder to enter the Grand View Park, located at Singac, New Jersey, until December 23, and also to enter the "Grand National Treasure Hunt contest for $50,000.00." The prizes offered in the contest ranged from a first prize of $25,000 down to two hundred prizes of $50 each.
 To each purchaser of a ticket, a sheet of paper was forwarded. On one side were six cartoons, under each being a list of twenty-four or twenty-five suggested titles for the cartoon above. "The object of the game," the printed instructions on the sheet declare, "is to select the best or most appropriate title for each cartoon". Across the top of the cartoons appears the statement: "Select correct cartoon titles and write answers in coupon. See other side." On the other side is the "answering coupon" with six blanks where the titles selected by the holder of any ticket were to be placed.
 When filled out, the coupons were to be mailed to reach New York by December 10th. A committee of competent [13 Cal.App.2d Supp. 757] judges was to be selected by the association in charge of the contest, to award the prizes among the contestants according to "the order of the excellence of their answers in the opinion of the judges". In the event of a tie for any prize an essay of not to exceed one hundred words was to be submitted and the tie determined by the relative merits of the essay.
 Number one cartoon, with its suggested titles, may be taken as a fair example of those involved in contest.
 Graphic Material Omitted
 The titles suggested for this cartoon are: The Big Shot, Jack Dempsey, Sir Prize, Cross-Roads of the World, Bing Crosby, Mr. Otis Regrets, Red Cross Drive, Racket-Tears, Star Reporter, Jack Dempsey's Corner, Dangerous Corner, Signs Of The Times, False Alarm, Damaged Goods, The Book-Worm Turns, Time to Retire, Booming Business, Auto-Biography, Embarrassing Moments, Minature World War, Sunday Driver, Round-the-World With No "Jack", World History, The Shot-that-was-heard-'round-the-World.
 [1] Our conclusion that the scheme thus proposed is a lottery is not founded upon a suspicion that the committee of competent judges will not be appointed nor upon a doubt that when appointed they will deliberate and determine which ones of the thousands of contestants presented the "best and most appropriate" titles for the six cartoons. Our conclusion is based on the conviction that even if the judges are appointed and do deliberate, nevertheless, the prizes will be distributed by chance, because the elements of a bona fide contest of skill are not present. [13 Cal.App.2d Supp. 758]
 If, instead of having titles suggested for these cartoons, we had names of states, Arizona, Utah, Vermont, and so on, whether or not the six answers put in by any individual agreed with those selected by the judges would obviously be a matter of pure chance, for there would be no basis in reason whereby one name should be preferred over another. In essence, that is just the situation here. None of the titles suggested is descriptive of or applicable to the whole cartoon to which they apply. Almost every title suggested is possible because of its relation to one or more of the ideas which can be found in the hotch-potch of its cartoon. Under each cartoon are several titles, each one as apt to be given first place as any other one, because it, as the others, embodies one or more of the many ideas scattered around in the cartoon. There is no standard by which one title can be said to be either "best", or "more appropriate", than all others. It follows that some one of the many contestants will receive first prize, his selection depending not on his skill in picking titles, but upon the chance that the six he selected happened to be also the six that the judges selected. If we eliminate all but the nine "best" titles under each cartoon, the chance a contestant has of selecting the same six the judges do is less than one in half a million.
 So far as we are aware this precise attempt to escape the widespread laws against lotteries has not been before any court of review. Schemes, in which ratiocination was given a part in the hope that it would dress the chance up sufficiently so that it would not be recognized, have been discussed, however. As stated in National Thrift Ass'n v. Crews, (1925) 116 Ore. 352 [241 P. 72, 41 A.L.R. 1481]: "In determining whether the contract is in the nature of a lottery, we look, not to the name, but the game. Courts will not tolerate subterfuge, however ingenious may be the scheme devised to evade the law." So it has been that contests wherein, seemingly, deductive reasoning would play a great part, have been held lotteries.
 In the case of Hudelson v. State, (1883) 94 Ind. 426 [48 Am. Rep. 171], a gold watch was the prize for the one who came nearest to stating the number of beans in a glass globe. It was conceded that an expert mathematician could, by his calculations, come nearer to figuring out the possible number [13 Cal.App.2d Supp. 759] of beans in the globe, than one not skilled, but, because of the elements of uncertainty of necessity present in his calculations, it was held that at best the mathematician's answer would be a guess, and the gold watch would be awarded by chance.
 Five thousand dollars was to go to the one who most nearly estimated the number of cigars upon which the federal government would collect taxes in a certain month. Holding this contest a lottery the court in People v. Lavin, (1904) 179 N.Y. 164 [71 N.E. 753, 1 Ann. Cas. 165, 66 L.R.A. 601], stated: "A lottery does not cease to be such and become a mere contest because its result may be affected to some slight extent by the exercise of judgment."
 In Stevens v. Cincinnati Times-Star Co., (1905) 72 Ohio St. 112 [73 N.E. 1058, 106 Am.St.Rep. 586], the question to be determined in the contest was the total vote to be cast for Secretary of State. In holding the scheme unlawful, this definition of chance, found in 11 C.J. 279, was characterized as an intelligent one: "Possibility, hazard, risk, or the result or issue of uncertain and unknown conditions or forces, neither understandingly brought about by one's act, nor pre-estimated by one's understanding." The opinion continued: "This element of chance is not at all incompatible with the presence of an element of calculation, or even certainty. ... there is an element of skill, possibly certainty, involved, but it is clear that the controlling predominating element is mere chance." So also, in Waite v. Press Pub. Co., 6th C.C.A. 1907) 155 Fed. 58 [11 L.R.A. (N. S.) 609], a contest involving an estimate of the total popular presidential vote was held to be a lottery.
 In the contest before us we find that while the outcome could be foreseen in a measure by the exercise of thought, although "fancy" would be a more accurate word, nevertheless thought played so small a part that the controlling force remained chance. So understood, the scheme appears a lottery, in which one stood a chance of winning $25,000 by the expenditure of one dollar, a half-hour's time, and a three cent stamp.
 No ruling complained of merits discussion. The judgment is affirmed.
 Shaw, P. J.,
 Concurring.
 I concur. It is obvious from the explanation of the scheme furnished by defendant's evidence [13 Cal.App.2d Supp. 760] that no contest to be determined by the exercise of skill or judgment is set up thereby. None of the cartoons has any apparent unity of thought or subject. Each cartoon depicts a mere congeries of objects, combined for no apparent purpose other than that each may serve as a clue to which one or more of the titles suggested below may be connected. If there is any opportunity at all for the exercise of skill or judgment in selecting a set of titles for the cartoons from those suggested, it is clearly but slight, and the agreement of one person's selection with that of another must depend mainly on chance. The scheme is therefore within the rule recognized in several of the authorities cited in the main opinion and stated in 38 Corpus Juris 291 as follows: "The rule generally followed in the United States is that the word 'lottery' includes those schemes wherein chance is the dominant factor in determining the result, although it may be affected to some degree by the exercise of skill or judgment."
 Schauer, J.,
 Concurring.
 I concur in the judgment, not upon the theory that the scheme disclosed by the evidence is inherently incapable in any event of being conducted as a bona fide contest of skill, but solely upon the ground that the evidence is sufficient to support a finding that such scheme in this case was understood by the defendant to possess all the necessary attributes of, and to operate as, a lottery. Some of the suggested cartoon titles appear to me to be more appropriate than others and I am not prepared to hold that some one title in each instance may not rationally be shown to be most appropriate of all. If one title only were obviously descriptive of each cartoon, then the elements of keen observation skill and industry in differentiation would indeed be absent and such fact might be inferential of the character assigned to the enterprise.
 As disclosed by the authorities cited in the opinion of Judge Bishop and the concurring opinion of Presiding Judge Shaw, which need not here be reiterated, the fact that skill may enter into a "contest" is not necessarily determinative of its character. The project in this case readily admitted of use as a lottery and the fact that it was understood that it was to be so used and that the tickets were understood to represent chances therein and were purchased for that consideration [13 Cal.App.2d Supp. 761] rather than for gaining admission to, and privileges in, Grand View Park, Singac, New Jersey, may, I think, be inferred circumstantially from the evidence. That the plan portrayed is a subterfuge is suggested by the statement in defendant's Exhibit 2. "The Grand National Treasure Hunt Contest gives one an opportunity to win large cash prizes with the protection to the participant of entering a contest which conforms with all the laws of the government," when considered in its relationship to all the other circumstances shown.
 To establish defendant's guilt of the offense with which he is charged, it was not necessary to prove that he possessed a ticket to an actual lottery drawing. The ordinance (city of Los Angeles No. 37,737, N. S.), provides in material part: "Section 1. It shall be unlawful for any person to have in his possession any lottery ticket, or any ticket, bill, paper ... or any other object purporting or understood to be ... a ticket, chance, share, or interest in, or depending upon the event of, a lottery. ..."
 I am satisfied that the evidence is sufficient to have warranted the trial court in finding, as it impliedly did find, that the defendant understood and believed that he possessed tickets in and to an enterprise which encompassed all the factually essential elements of a lottery but which he thought was cleverly enough devised to escape the onus of penal sanction. Upon such finding the judgment is proper.