Argued September 8; affirmed September 22; rehearing denied
October 13, 1936

## STATE *v.* SCHWEMLER

(60 P. (2d) 938)

*Wm. E. Walsh,* of Marshfield, for appellant.

*Ben C. Flaxel,* District Attorney, of North Bend, and *L. A. Liljeqvist,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for the State.

RAND, J. The defendant was convicted of the crime of setting up and promoting a lottery, which, under section 14-801, Oregon Code 1930, is a criminal offense. The particular act charged in the indictment and estab-

lished upon the trial was that the defendant was operating a dart game and this, the state contends, constituted a lottery, bringing it within the prohibition of Article XV, section 4, of the constitution of this state, which provides that: ·

"Lotteries, and the sale of lottery tickets, for any purpose whatever, are prohibited, and the legislative assembly shall prevent the same by penal laws."

By section 1 of chapter 369, Oregon Laws 1935, the legislature of this state enacted a provision which reads as follows:

"That municipal corporations and counties be and they hereby are empowered to license, limit, regulate, impose a privilege tax or charge upon or prohibit pin ball games, dart games, and other games of like character involving an element of skill."

Pursuant to the authority thus conferred, the city of Marshfield granted to the defendant a license to conduct a dart game and he was operating·under that license in the doing of the acts complained of. From this it follows that, if the defendant, in operating a dart game, was conducting a lottery, the statute authorizing the licensing of the game is void and of no effect and a license issued in pursance thereof constitutes no defense to a person charged with conducting a lottery.

Therefore, the question for decision is: Did the acts of the defendant, in operating a dart game in the manner as shown by the testimony in this case, constitute a lottery and thereby come within the prohibition of the constitution, or was it another and different form of gambling against which there is no constitutional prohibition?

The question of what does or does not constitute a lottery has been before this court in numerous cases

and the law upon that question is well settled by the decisions of this and other courts.

■ It is settled that the word "lottery", as used in the constitution of this state, has no technical, legal signification different from the popular one and the word is to be given the meaning generally accepted and in popular use at the time when the constitution was adopted: *Quatsoe v. Eggleston*, 42 Or. 315 (71 P. 66). See also 38 C. J., p. 286.

It is also settled that it is a form or species of unlawful gaming: *Ex parte Kameta*, 36 Or. 251 (60 P. 394, 78 Am. St. Rep. 775); *Portland v. Yick*, 44 Or. 439 (75 P. 706, 102 Am. St. Rep. 663). Most gambling games, however, are not lotteries and, therefore, are not included within the constitutional prohibition. The distinction between the ordinary forms of gambling and a lottery was recognized by the framers of the constitution by prohibiting the enactment of any law legalizing lotteries and by making no reference whatever to other forms of unlawful gaming. The distinction was also recognized by the legislature in defining what shall constitute unlawful gaming and in prescribing a different punishment for the offense of promoting a lottery from that prescribed for unlawful gaming.

The reason for the distinction between a lottery and the ordinary forms of gambling is the demoralizing effect of a lottery upon the people generally throughout the state. As said in *Ex parte Kameta*, supra:

"* * * 'Experience has shown that the common forms of gambling are comparatively innocuous when placed in contrast with the widespread pestilence of lotteries. The former are confined to a few persons and places, but the latter infests the whole community; it enters every dwelling; it reaches every class; it preys upon the hard earnings of the poor; it plunders the

ignorant and simple.' And Mr. Justice Campbell says: 'No other form of gambling operates as extensively in its dealings, or demoralizes so many people.' People v. Reilly, 50 Mich, 384, 388, 45 Am. Rep. 47, 15 N. W. 522. As a result, there is now scarcely a state in the Union where lotteries are tolerated, and the mails are closed against them by act of congress.''

■ In *Fleming v. Bills*, 3 Or. 286, *Ex parte Kameta,* supra, *National Thrift Assn. v. Crews,* 116 Or. 352 (241 P. 72, 41 A. L. R. 1481), *Johnson v. McDonald,* 132 Or. 622 (287 P. 220), and *Multnomah County Fair Assn. v. Langley,* 140 Or. 172 (13 P. (2d) 354), as well as in the case first cited, various definitions of lotteries have been adopted and approved by this court and we shall make no attempt to restate them further than to say that ''any scheme whereby one, on paying money or other valuable thing to another, becomes entitled to receive from him such a return in value, or nothing, as some formula of chance may determine'' is a lottery. This is taken from Bishop on Stat. Crimes (2d Ed.), section 952, and is quoted with approval in *Quatsoe v. Eggleston,* supra, and again in *National Thrift Assn. v. Crews,* supra. In the first of the two cases last cited, this court also quoted with approval the definition given by Mr. Chief Justice Sherwood as follows:

''* * * a scheme by which a result is reached by some action or means taken, and in which result man's choice or will has no part, nor can human reason, foresight, sagacity, or design enable him to know or determine such result until the same has been accomplished.''

In 38 C. J., p. 287, a lottery is defined as any ''scheme for the distribution of prizes or things of value by lots or chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize; or as a game of hazard in which small

sums of money are ventured for the chance of obtaining a larger value, in money or other articles''. It will thus be seen that the three necessary elements of a lottery are the offering of a prize, the awarding of the prize by chance, and the giving of a consideration for an opportunity to win the prize.

■ A careful consideration of the evidence convinces us that the game being conducted by the defendant was a lottery and prohibited by the constitution of this state and that the legislature had no power to authorize the licensing of such a game.

We shall make no attempt to describe the manner in which the same was played. It is only necessary to say that at the time the act of the legislature in question was passed games of this character must have been common or there would have been no legislation and, hence, the manner in which these games are conducted must have been well understood. From general information, we know that there are many dart games being operated throughout the state and this shows that the manner of their operation is a matter of general information. For that reason, no description of the game is necessary.

The whole evidence shows that the game was played for money or merchandise offered as a prize in consideration of moneys paid by each player of the game and that the result of the game, in so far as the winner is concerned, was wholly a matter of chance and not the result of any skill, knowledge or forethought upon his part and, as such, constituted a lottery within the prohibition of the constitution and that the legislature had no power to enact any law authorizing the licensing of the game. Therefore, section 1 of chapter 369, Oregon Laws 1935, in so far as it authorizes the licensing of dart games, is unconstitutional and void.

Finding no error in the record, the judgment of the lower court is affirmed.

Belt, Bean and Bailey, JJ., concur.

Rossman and Kelly, JJ., specially concur.

Campbell, C. J., not sitting.

---

ROSSMAN, J. I concur in the foregoing opinion except in the two parts to which I shall now refer. The majority intimate that the awarding of the prize must be dependent upon pure chance; otherwise the scheme is not a lottery. They declare that if skill plays any part, however small, the scheme is not a lottery. I can not concur in that view of the law.

From 38 C. J., Lotteries, § 5, p. 291, the following is taken:

"The rule generally followed in the United States is that the word 'lottery' includes those schemes wherein chance is the dominant factor in determining the result, although it may be affected to some degree by the exercise of skill or judgment; * * *"

From 17 R. C. L., Lotteries, § 10, p. 1223, we quote:

"In the United States, however, by what appears to be the weight of authority at the present day, it is not necessary that this element of chance should be pure chance, but it may be accompanied by an element of calculation or even of certainty."

In support of the statement just made, the editor cites the two decisions which will now be reviewed. In *Waite v. Press Publishing Association*, 155 Fed. 58 (85 C. C. A. 576, 12 Ann. Cas. 319 (and note), 11 L. R. A. (N. S.) 609 (and note), the court held that a scheme whereby the defendant obtained subscriptions for periodicals by promising to the subscriber who submitted the most accurate estimate of the total vote

to be cast for President November 8, 1904, a prize of $10,000, and to the individual making the second closest estimate, $5,000, was a lottery. It so held notwithstanding it pointed out:

"One skilled in national politics and conversant with existing conditions might make a closer estimate than one wholly ignorant."

In *Stevens v. Cincinnati Times-Star Co.*, 72 Ohio St. 112 (73 N. E. 1058, 106 Am. St. Rep. 586) (and note) a scheme similar to the one just mentioned was held to be a lottery. The Ohio court nevertheless pointed out:

"It is true that one acquainted with the results of the elections of the state in previous years and educated in politics would have some advantage over one ignorant in those respects, yet it must be apparent, even to a casual observer, that the result would depend upon so many uncertain and unascertainable causes that the estimate of the most learned would be, after all, nothing more than a random and undecisive judgment. In the sense above indicated there is an element of skill, possibly certainty, involved; but it is clear that the controlling predominating element is mere chance. It was a chance as to what the total vote would be: it was equally a chance as to what the guesses of the other guessers would be."

For additional decisions to the same effect see the annotations above cited.

In *People v. Rehm* (Cal. Super.), 57 P. (2d) 238, the court had under review a scheme wherein the participants paid $1 each to the operator, and were given a sheet containing six cartoons and 25 suggested titles. After a board of judges had determined which participants had selected the most appropriate titles, prizes were then awarded to the winning participants. In holding that the scheme was a lottery, the court nevertheless declared:

"In the contest before us we find that while the outcome could be foreseen in a measure by the exercise of thought, although 'fancy' would be a more accurate word, nevertheless thought played so small a part that the controlling force remained chance. So understood, the scheme appeared a lottery, in which one stood a chance of winning $25,000 by the expenditure of $1.00, a half hour's time, and a 3-cent stamp."

From *Brooklyn Daily Eagle v. Voorhies,* 181 Fed. 579, we quote:

"It has been held in numerous cases, such as Waite v. Press Publishing Association, 155 Fed. 58, 85 C. C. A. 576, 11 L. R. A. (N. S.) 609, Hudelson v. State, 94 Ind. 426, 48 Am. Rep. 171, U. S. v. Wallis (D. C.) 58 Fed. 942, and Horner v. U. S. 147 U. S. 449, 13 Sup. Ct. 409, 37 L. Ed. 237, that the three necessary elements of a 'lottery' are the furnishing of a consideration, the offering of a prize, and the distribution of the prize by chance rather than entirety upon a basis of merit."

The above quotation taken from Ruling Case Law also cites *Horner v. United States,* 147 U. S. 449 (13 S. Ct. 409, 37 L. Ed. 237), and *Public Clearing House v. Coyne,* 194 U. S. 497 (24 S. Ct. 789, 48 L. Ed. 1092). In the case last cited each participant could not only increase the amount of his gains but also enhance the likelihood of his eventual success by gaining for the scheme additional participants. Nevertheless the court held that the scheme was a lottery.

In *Multnomah County Fair Association v. Langley,* 140 Or. 172 (13 P. (2d) 354), our decision pointed out that chance as distinguished from skill must be the predominant factor in a lottery, and cited authorities in support of the statement. Since the decision of the majority holds that in the scheme operated by the defendant skill plays no part whatever and the prize is awarded purely by chance, the statement now under

review is unnecessary; that is, no intimation is needed that a scheme is not a lottery unless the award is made purely by chance. In my opinion, a scheme is a lottery, even though skill plays a part, provided chance is the predominant factor. In *People v. Lavin,* 179 N. Y. 164 (71 N. E. 753, 66 L. R. A. 601, 1 Ann. Cas. 165), the court pointed out:

"The test of the character of the game is not whether it contains an element of chance or an element of skill, but which is the dominating element that determines the result of the game."

The record indicates that in dart games provision is made for a small element of skill. It is questionable, however, whether any dart game is a bona fide contest of skill. Concerning the bona fides of the contest, see *Brooklyn Daily Eagle v. Voorhies,* supra. The provision for skill, as in many other like schemes, appears to be a mere subterfuge to give an appearance of lawfulness and to conceal its real nature. The record undoubtedly shows that the predominating factor in the award of prizes in dart games is chance. The facts are all before us. There is no controversy concerning the nature of the game. Such being true, whether or not the scheme is a lottery is purely a question of law. That being so, a conclusion is justified that the scheme is a lottery.

I dissent from the portions of the decision of the majority at variance with the above. In all other parts I agree.

KELLY, J., concurs.